*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
MULTI-MEDIA INTERNATIONAL, LLC  :
:
    Plaintiff, :
:
:           OPINION
    v. :   Civil Action No.: 09-3195 (FLW)
:
:
THE CLARK GROUP, INC., *et al.* :
:
:
    Defendants. :
_____ :

**WOLFSON, United States District Judge**:

    Presently before the Court is a motion by Defendants The Clark Group, Inc., Clark Distribution Systems, Inc., Highway Distribution Systems, Inc., Clark Worldwide Transportation Systems, Inc., and Evergreen Express Lines, Inc. (collectively, "Defendants") seeking (i) disqualification of plaintiff Multi-Media International, LLC ("Plaintiff" or "MMI") as the lead plaintiff in this putative class action; (ii) disqualification of Michael Levine, Esq. as class counsel; and (iii) partial summary judgment in connection with Count II of the Complaint wherein Plaintiff alleges a violation under New Jersey's Consumer Fraud Act. The instant motion arises out of a putative class action suit in which Plaintiff seeks, on behalf of other similarly situated "publishers/shippers" to recover excess diesel fuel surcharges Plaintiff claims were wrongfully paid to the defendant freight consolidators. Rather than oppose the motion to disqualify Plaintiff as lead plaintiff and to disqualify Michael Levine, Esq. as class counsel,

1

Plaintiff cross-moves seeking leave to file an amended Complaint to convert this action to a direct action by Plaintiff individually against the Defendants. Plaintiff's cross-motion to amend effectively moots that portion of Defendants' motion for summary judgment which seeks disqualification. For the reasons set forth below, the Court will grant Plaintiff leave to amend the Complaint to assert a direct action against Defendants and, further, grant Defendants' motion for partial summary judgment as to Plaintiff's statutory fraud claims in Count II of the Amended Complaint.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff is in the business of magazine publishing for newsstand distribution. Defendants' Statement of Undisputed Material Facts ("Defendants' Stmt.") at ¶ 3; Plaintiff's Response to Defendants' Stmt. ("Plaintiff's Responding Stmt.") at ¶ 3. The Clark Group, Inc. is engaged in transportation and logistics services to the print media industry throughout the United States and between the United States and other countries. The Clark Group, Inc. conducts its domestic operations through its subsidiaries Clark Distribution Systems, Inc., Highway Distribution Systems, Inc., and Evergreen Express Lines, Inc., and its international operations through its subsidiary Clark Worldwide Transportation Systems, Inc. Defendants' Stmt. at ¶ 2; Plaintiff's Responding Stmt. at ¶ 2. Defendants ship mass market and consumer magazines on behalf of print media customers such as Plaintiff. Defendants' Stmt. at ¶ 1; Plaintiff's Responding Stmt. at ¶ 1. Defendants charge a base rate to magazine publisher/shippers such as Plaintiff, which rate is negotiated and agreed upon on an individual and periodic basis. Compl. at ¶ 33. The base rate for Defendants' services are not in dispute in this case. Rather, the instant action is based upon a diesel fuel surcharge Plaintiff claims that Defendants wrongfully

added to their bill for services rendered between June 25, 2002 and June 25, 2009.  Compl. at ¶ 2.

On September 26, 2008, Michael L. Levine, Esq., corporate counsel and Chief Operating Officer of Plaintiff, forwarded a proposed class action complaint concerning Defendants' diesel fuel surcharge to Plaintiff's CEO and four other executives advising that a class action complaint would be filed unless Plaintiff received a satisfactory response.  Defendants' Stmt. at ¶ 8; Plaintiff's Stmt. at 8.  Settlement discussions ensued, however, Plaintiff ultimately filed a class action complaint in this Court on October 28, 2008.  On November 20, 2008, Plaintiff voluntarily dismissed the action without prejudice.  Defendants' Stmt. at ¶ 12; Plaintiff's Stmt. at 12.  Plaintiff contends that the matter was settled in late November of 2008.  Plaintiff's Stmt. at 13.  Defendants counter that no settlement was ever reached.  Rather, Defendants contend that unbeknownst to them, Anderson News ("Anderson"), which Defendants describe as a customer of MMA and indemnitor of Clark, continued settlement discussions with Plaintiff.  Defendants' Stmt. at ¶¶ 13-17. Defendants contend that they became aware of such discussions during the week of June 22, 2009, when representatives of Anderson advised Defendants that the terms of an agreement had been reached, contingent upon Defendants' willingness to pay one-third of the proposed settlement.  Id. at ¶ 17.  Defendants refused to agree to the proposed settlement terms and, on March 2, 2009, an involuntary petition for bankruptcy was filed against Anderson.  On June 25, 2009, Plaintiff filed the instant action individually, and on behalf of a putative class of "other similarly situated publisher/shippers".

In short, Plaintiff alleges that Defendants unlawfully imposed fuel surcharges which bore no relation to the actual payments made by Defendants to independent contractor freight transporters, despite written and oral representations that such surcharges were "calculated based

3

upon a purported 'current fuel report' from the federal Interstate Commerce Commission." Compl. at ¶ 3.  Plaintiff contends that the fuel surcharge amounts billed by Defendants did not reflect any actual payments made by Defendants, or costs otherwise incurred by Defendants, but, rather, were used by Defendants as a means of surreptitiously increasing their profit.  Id. at ¶ 4. Plaintiff alleges claims against Defendants for: (1) common law fraud; (2) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-2; (3) aiding and abetting common law fraud; (4) negligent misrepresentation; (5) unjust enrichment; (6) conversion; (7) breach of the duty of good faith and fair dealing; and (8) injunctive relief, seeking to permanently enjoin Defendants from using a calculation method which bears no relation to the actual amount of diesel fuel consumed.

## II. DISCUSSION

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 202 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson, 477 U.S. at 248.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241,

247 (3d Cir. 2004) (quoting Anderson, 447 U.S. at 255); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under Anderson, Plaintiff's proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quotations omitted); see also Matsushita, 475 U.S. at 586; Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### A. DEFENDANTS' DISQUALIFICATION MOTION/PLAINTIFF'S CROSS-MOTION TO AMEND

In light of Plaintiff's involvement, and the involvement of Michael L. Levine, Esq., in the settlement negotiations associated with Plaintiff's initial class action complaint, Defendants filed the instant motion seeking Plaintiff's disqualification as lead plaintiff and the disqualification of

Levine as class counsel.  In response, Plaintiff has cross-moved seeking leave to withdraw MMI as lead plaintiff for the class and leave to amend the Complaint to assert only a direct action against Defendants, and no class claims.  Additionally, Plaintiff seeks leave to withdraw Levine as counsel to the class and retain Levine as Plaintiff's counsel in the proposed direct action against Defendants.[1]  Defendants do not appear to oppose Plaintiff's cross-motion to amend, noting that "[i]n light of Multi-Media's unilateral actions to withdraw as party and counsel to this purported class, requested in Defendants' motion, the only remaining issue for the Court to decide in connection with Defendants' pending motion is the request to dismiss Plaintiff's substantive claim under the [New Jersey Consumer Fraud Act]."  Defendants' Reply Brief at 1.

Under Fed.R.Civ.P. 15(a)(2), leave to amend shall be freely given "when justice so requires."  Reasons for denial include "situations in which the plaintiff has delayed seeking leave to amend if the delay 'is undue, motivated by bad faith, or prejudicial to the opposing party.'"  Oliva v. New Jersey, 604 F.3d 788 (3d Cir. 2010) (quoting Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008).  Here, in response to Defendants' disqualification motion, Plaintiff seeks to amend the complaint to assert a direct action against Defendants, rather than the class action asserted in the initial complaint filed on June 25, 2009. Defendants do not oppose Plaintiff's motion to the extent it seeks to assert a direct action and the Court finds no grounds which would warrant denial of the application.  The Court therefore grants Plaintiff's

---

[1]  Plaintiff also indicates that a new lead plaintiff designated by replacement counsel will commence a new class action in this district.  See Plaintiff's Opposition Brief at 1, n.1.  Plaintiff states that once the new class action is filed, it intends to move for consolidation of the instant action with the new class action.  Defendants argue that the pending class action lawsuit should be dismissed with prejudice as it is now without a plaintiff and without counsel.  There is no basis, however, upon which this Court can dismiss with prejudice the class action, as amendment of Plaintiff's Complaint disposes of the class action for the purposes of the instant action. Additionally, this Court need not reach the issue of the viability of a new class action or its consolidation with this direct action as the new class action has not yet been filed and those issues are not properly before this Court.

cross-motion to amend the Complaint to assert a direct action and dismisses that portion of Defendants' motion which seeks disqualification of lead plaintiff and class counsel as moot.

### B. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S NEW JERSEY CONSUMER FRAUD ACT CLAIM

In the Second Count of the Amended Complaint[2], Plaintiff asserts a statutory fraud claim under § 56:8-2 of the NJCFA. The NJCFA provides in relevant part:

> The act, use or employment by any person[3] of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8-2. "To state a cause of action under the [NJ]CFA, a plaintiff must allege: (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements - defendants' allegedly unlawful behavior and the plaintiff's ascertainable loss." Parker v. Howmedica Osteonics Corp., No. 07-02400 (JLL), 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) (citing New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super 8, 13 (App. Div. 2003)).

As previously noted, Plaintiff's NJCFA claim is based upon the purportedly fraudulent diesel fuel surcharge that Defendants added to Plaintiff's invoices. Plaintiff alleges that

> The invoices . . . contained a statement that the "FSC [an acronym for 'fuel surcharge'] . . . is based on the current ICC Fuel Report," implying that the Fraudulent Fuel Surcharge was either mandated or authorized by a then-existing official federal governmental agency report. In fact,

---

[2]   The substance of the Second Count is identical to that set forth in the initial Complaint. Accordingly, Defendants' motion for partial summary judgment as to the Second Count will be deemed to apply to the Amended Complaint.

[3]   N.J.S.A. 56:8-2(d) defines "person" to include, among others, "any. . .corporation, company, trust, business entity or association." Accordingly, Defendants qualify as persons under the NJCFA.

> however, the Interstate Commerce Commission was *not* in existence during any part of the Relevant Period, nor was any report published by that federal agency during Relevant Period, because the ICC was abolished by the Interstate Commerce Commission Termination Act of 1995. Thus the statement contained on the Defendants' invoices is intentionally misleading and false."

Amended Complaint at ¶ 35 (footnote omitted). Plaintiff further alleges that Defendants computed the fraudulent fuel surcharge as a percentage of their transport base rate, and falsely represented both orally and on the respective invoices that the surcharge was simply a pass-through reimbursement for actual payments made by Defendants to its freight transporters. Id. at ¶¶ 36, 39. Plaintiff claims that in actuality, the fuel surcharges were well in excess of the actual expenses incurred by them as a result of any increase in diesel fuel costs. Id.

The NJCFA does not cover every sale in the marketplace. Professional Cleaning and Innovative Building Services, Inc. v. Kennedy Funding, Inc., No. 05-2384 (WJM), 2009 WL 1651131, * 4 (D.N.J. Jun. 12, 2009) (citing Papergraphics Intern., Inc. v. Correa, 389 N.J.Super. 8, 13 (N.J.App.Div. 2006)). Defendants contend that Plaintiff's claim under the NJCFA in connection with the foregoing allegations fails as a matter of law because the transactions at issue in this case, which Defendants describe as involving commercial freight and logistics services, are not the type typically consumed by the public, and, accordingly, do not fall within the ambit of the NJCFA. Citing Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 514 (3d Cir. 2006), Defendants argue that the transaction at issue was not a "consumer" transaction within the purview of the NJCFA in that Defendants' services are not sold to customers in the "popular sense." Defendants contend that the services they provide cannot be likened to services provided by general carrier services such as Federal Express or United Parcel Service, as Plaintiff suggests, because they "[do] not provide all-purpose shipping services to the general public at large." Defendants' Reply Br. at 5. Rather, Defendants contend that they specialize "in

the consolidation and shipping of mass market books, magazines and newspaper inserts to a single, target group - the printing and publishing industry." Id. (citing Certification of Charles H. Fisher, III at ¶ 2). Defendants explain that "'[c]onsolidation' refers to the process of combining, warehousing and routing partial and full truckloads of multiple customers' products to multiple wholesale locations in order to minimize the cost of shipping." Id. Additionally, Defendants contend, that "[a] very limited portion of the business is devoted to the transportation of bulk mail to U.S. Postal Service bulk mail centers from large bulk mail distributors, another highly specialized and limited group of shippers." Defendants' Reply Br. at 5 (citing Certification of Charles H. Fisher, III at ¶ 3).

Based on the foregoing, Defendants argue that there is no support for Plaintiff's contention that Defendants' services are available to any member of the public that wishes to purchase them. Moreover, Defendants point out that where specialized services are offered to a discrete group of customers, courts within this Circuit have held that they do not qualify as a consumer transaction for the purposes of N.J.S.A. 56:8-2. Defendants' Reply Br. at 6-7 (citing S.Broward Hosp. Dist. v. MedQuist, Inc., 516 F.Supp.2d 370, 399 (D.N.J. 2007), aff'd 258 Fed.Appx. 466 (3d Cir. 2007) ("Medical transcription services are not services that are sold to the general public."); Cetel, 460 F.3d at 514-15 ("Unlike the sale of credit to the general public . . . the sale of complex employee welfare benefit plans to a very specific class of investor does not point to the remedial purpose or intent of the [NJCFA], 'namely, to root out consumer fraud.'") (citations omitted); Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F.Supp.2d 557, 561 (D.N.J. 2002) (finding accounting, tracking, and reporting functions outside scope of NJCFA where services are incidental to contract for sale of products between manufacturer and wholesaler); Professional Cleaning and Innovative Bldg. Srvcs. v. Kennedy

9

Funding, No. 05-2384 (WJM), 2009 WL 1651131, at * 5 (D.N.J. Jun. 12, 2009) (finding hard money financing outside scope of NJCFA because it "does not qualify as the sale of credit in the 'popular sense.'"). Finally, Defendants point out that contrary to the typical consumer transaction, the parties to the transactions at issue in this case possess relatively equal business experience and bargaining power and the transactions, therefore, do not require the overarching protections of the NJCFA.

Plaintiff counters that Defendants are attempting to advance "an as-of-yet unrecognized exclusion to the [NJCFA] for 'commercial freight and logistics services' that are readily available to the public and sold in large quantities to a large number of customers." Plaintiff's Opposition Br. at 17. According to Plaintiff, to assess whether a given transaction is a "consumer transaction" within the scope of the NJCFA, the inquiry is whether the services purchased were for use by the purchasing entity itself (as opposed to being purchased for resale) and whether the services are of a kind available to a large number of people without restriction, sold in large quantities, and sold to multiple customers. Id. at 19. Plaintiff reasons that here, there is no question that the transportation services purchased by Plaintiff were for its own use. Moreover, Plaintiff contends that Defendants' transportation services are indeed available to any member of the public who wishes to purchase them, are sold in large quantities and are sold to multiple customers. Id. Plaintiff reasons that while Defendants describe themselves as part of the "transportation and logistics industry", that industry "comprises a wide range of service providers, covering all modes of transport - air, road, rail, sea - as well as related services such as warehousing, handling, packaging, labeling, assembling, etc." Id. at 20 (citing www.pwc.com/gx/en/transportation-logistics/index.jhtml). Plaintiff goes on to state that

> The industry provides delivery and freight services, airline transportation, shipping, railroad transportation, and trucking services.

> This sector includes industries providing transportation of passengers and cargo, warehousing and storage for goods, scenic and sightseeing transportation, and support activities related to modes of transportation. http://www.bitpipe.com/tlist/Transportation-Industry.html. Clearly this is a type of service provided to consumers in general.

[Plaintiff's Opposition Br. at 21]. Plaintiffs point to Defendants' advertisements in which they state that they "provide an extensive range of transportation management and logistics services and technology solutions including shipment optimization and load consolidation of freight, mode selection, carrier management, load planning and execution and web based shipment visibility." Id. Plaintiff goes on to point out that Defendants "deliver over 35 million magazines per week from over 90 print locations to wholesalers throughout North America." Id. Plaintiff contends that Defendants' transportation services are offered to any member of the public that wishes to use them and are not restricted to a narrow group of purchasers. Plaintiff argues, therefore, that they do not fall within any of the judicially-recognized exceptions to the NJCFA. Id. at 22.

Alternatively, Plaintiff contends that because the price of the newsstand magazines necessarily includes a *pro rata* share of the cost of shipping the magazines to retail stores for purchase by readers, Defendants indirectly offer their services to the millions of consumers who purchase magazines and books at their local store, retailer or newsstand. In support of this contention, Plaintiff cites to N.J.S.A. 56:8-1, which defines the term "merchandise" to include "any objects, wares, goods, commodities, services or anything offered, directly *or indirectly* to the public for sale." (Emphasis added). Plaintiff argues that even assuming that Defendants' direct sales of transportation services to MMI do not fall within the scope of the NJCFA, its

11

"'indirect' sale of such services to the purchasers of magazines independently brings the same within the Act." Id. at 22.

The applicability of the NJCFA to a particular transaction, "hinges on the nature of the transaction, requiring a case by case analysis." Hoffman v. Encore Capital Group, Inc., 2008 WL 5245306, at * 3 (N.J.App.Div. Dec. 18, 2008) (quoting Papergraphics Intern., Inc., 389 N.J. Super. at 13). The scope of the NJCFA "is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." Id. (*citations and quotations omitted*). "Courts addressing whether a given transaction qualifies as a 'consumer transaction' often examine whether the challenged service qualifies as 'merchandise' which is 'of the type sold to the general public.'" Professional Cleaning and Innovative Bldg. Srvcs., 2009 WL 1651131 at * 4 (citing Finderne Mgmt. Co., Inc. v. Barrett, 402 N.J.Super. 546, 570 (N.J.App.Div. 2008); Cetel, 460 F.3d at 514, S. Broward Hosp. Dist., 516 F.Supp.2d at 399; Salamon v. Teleplus Enters., Inc., No. 05-2058, 2008 WL 2277094, at * 11-12 (D.N.J. Jun. 2, 2008)). Additionally, "courts focus on the nature of the transaction, such as evidence relating to the experience of the commercial entities and evidence of equal bargaining power." Professional Cleaning and Innovative Bldg. Srvcs., 2009 WL 1651131 at * 4 (citing Papergraphics Intern., Inc., 389 N.J.Super. at 14; 539 Absecon Blvd., L.L.C. v. Shan Enters. Ltd. Partnership, 406 N.J.Super. 242, 276 (N.J.App.Div. 2009)).

Here, there is no suggestion that the parties are of unequal bargaining power. Indeed, both parties are commercial entities doing business throughout the United States and other countries. Amended Compl. at ¶¶ 9, 12, 13. Therefore, the applicability of the NJCFA to the transactions at issue hinges on whether the services provided by Defendants are, as the relevant case law describes, "of the type sold to the general public." The Court remains unconvinced by

12

Plaintiff's attempts to bring the transactions within the purview of the NJCFA.  Clearly, the transportation services provided by Defendants to "publisher/shippers" such as Plaintiff are not the type of transportation services sold to the general public.

In opposition to the instant motion, Plaintiff noted

> [t]here has been no production made by either side to date in this case, nor has there been any other discovery yet undertaken.  In view of the fact that there is no affidavit from any representative of the Defendants setting forth the scope of the Defendants' business activities, there is no record before the Court at this time form which the same could be definitively ascertained.  The record clearly needs to be more fully developed through discovery as to the exact nature and scope of the Defendants' business.

[Plaintiff's Opposition Br. at 21, n.18.]    In support of its position, Plaintiff submitted only internet citations describing the "transportation and logistics" industry as encompassing essentially all modes of transport and the certification of counsel, Michael L. Levine, Esq., summarizing his review of various 10-K filings of Clark Holdings, Inc.  In response, Defendants submitted the affidavit of Charles H. Fisher, III, the Chief Executive Officer of The Clark Group, Inc., in which Fisher unequivocally states that its business involves (i) the consolidation and shipment of mass market books, magazines and newspaper inserts to distribution companies who then deliver them to retail outlets; and (ii) limited services to large bulk mail distributors.  Fisher Cert. at ¶¶ 2-3.  Plaintiff has failed to provide any Rule 56(f) affidavit setting forth the reasons that it is unable to present facts essential to justify its opposition.  In the absence of any such affidavit, and in the absence of any facts supportive of Plaintiff's contention that Defendants' business should be so broadly construed, this Court finds that the transportation and logistics services provided by Defendants cannot qualify as the sale of merchandise to the general public.

Equally unavailing is Plaintiff's attempt to broaden the scope of the NJCFA to include Defendants' services within the purview of the NJCFA based upon the indirect sale of magazines and books to the public. While the ultimate cost of shipping is undoubtedly passed to consumers who purchase the product, the transactions at issue in the instant action do not involve purchases by those consumers and may not, therefore, be relied upon to bring this action with the scope of the NJCFA.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's cross-motion for leave to amend the Complaint is granted, as is Defendants' motion for partial summary judgment as to Plaintiff's statutory fraud claims in Count II of the Amended Complaint.

Dated: June 18, 2010

                                              s/ Freda L. Wolfson
                                            FREDA L. WOLFSON, U.S.D.J.